Lanning M. Trueb, ABA No. 8911083
JOHNSON KAMAI & TRUEB, LLC
330 L Street
Anchorage, AK 99501
Phone: 907.277.0161
Fax: 907.277.0164
E-mail: Lmtrueb@msn.com

Attorney for Claimant Palmer Thomassen

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA AT JUNEAU**

| | |
|---|---|
| IN THE MATTER OF THE CLAIMANT OF ANGELETTE, LLC, an Alaska limited liability company, Owner of the T/V KUPREANOF, Number 562486 for exoneration from or limitation of liability,<br><br>Plaintiff. | IN ADMIRALTY<br><br>Case No. 1:15-CV-00012-SLG |

**CLAIMANT PALMER THOMASSEN'S ANSWER, AFFIRMATIVE DEFENSES AND PRESENTATION OF CLAIMS**

Claimant Palmer Thomassen through Lanning M. Trueb of Johnson Kamai & Trueb, LLC, presents 1) his Answer to Angelette, LLC's Complaint for Exoneration From or Limitation of Liability; 2) his Affirmative Defenses to Angelette, LLC's Complaint; and 3) his own claims as required by applicable law and this Court's Order dated November 20, 2015 (Docket 5).

**ANSWER**

Claimant Palmer Thomassen answers Angelette, LLC's Complaint for Exoneration From or Limitation of Liability as follows:

1. This paragraph contains a question of law which requires no answer. To the extent an answer is required, denied.

2. Claimant is without sufficient knowledge to admit or deny allegations asserted in this paragraph and therefore deny the same.

3. Claimant is without sufficient knowledge to admit or deny allegations asserted in this paragraph and therefore deny the same.

4. Admit.

5. Admit as to the location of the vessel's sinking; all other allegations are denied.

6. Admit.

7. Admit.

8. Admit.

9. Admit.

10. Admit.

11. Claimant is without sufficient knowledge to admit or deny allegations asserted in this paragraph and therefore deny the same.

12. Claimant is without sufficient knowledge to admit or deny allegations asserted in this paragraph and therefore deny the same.

13. Claimant is without sufficient knowledge to admit or deny allegations asserted in this paragraph and therefore deny the same.

14. Claimant is without sufficient knowledge to admit or deny allegations asserted in this paragraph and therefore deny the same.

15. Claimant is without sufficient knowledge to admit or deny allegations asserted in this paragraph and therefore deny the same.

*Claimant Palmer Thomassen's Answer, Affirmative Defenses And Claims*
Case No. 1:15-CV-00012-SLG — Page 2 of 13

Case 1:15-cv-00012-SLG   Document 11   Filed 01/20/16   Page 2 of 13

16. Claimant is without sufficient knowledge to admit or deny allegations asserted in this paragraph and therefore deny the same.

17. Claimant is without sufficient knowledge to admit or deny allegations asserted in this paragraph and therefore deny the same.

18. Claimant is without sufficient knowledge to admit or deny allegations asserted in this paragraph and therefore deny the same.

19. Claimant is without sufficient knowledge to admit or deny allegations asserted in this paragraph and therefore deny the same.

20. Denied.

21. Denied.

22. Denied.

23. Denied.

24. Denied.

25. This paragraph requires no answer. To the extent an answer is required, denied.

26. Admit.

27. Claimant is without sufficient knowledge to admit or deny allegations asserted in this paragraph and therefore deny the same.

28. Claimant is without sufficient knowledge to admit or deny allegations asserted in this paragraph and therefore deny the same.

29. Denied.

## **AFFIRMATIVE DEFENSES**

Claimant Palmer Thomassen presents his Affirmative Defenses to Angelette, LLC's Complaint as follows:

1. With privity and knowledge, Angelette, LLC sent the T/V KUPREANOF to sea in an unseaworthy condition.

2. Conditions which caused the T/V KUPREANOF to sink were the result of Angelette, LLC's own negligent acts taken both prior to and after the vessel leaving Petersburg, Alaska.

3. With privity and knowledge, Angelette, LLC was in violation of applicable governing federal statutes and regulations and/or state statutes and regulations with respect to the condition of the T/V KUPREANOF when the vessel was sent to sea.

4. Claimant reserves the right to modify and add additional affirmative defenses as discovery progresses and additional facts are obtained in this matter.

## PALMER THOMASSEN'S PRESENTATION OF CLAIMS

Claimant Palmer Thomassen through Lanning M. Trueb of Johnson Kamai & Trueb, LLC, and pursuant to this Court's Notice to Claimants, dated November 20, 2015, Fed. R. Civ. P., Supplemental Admiralty Rule F(5), and other applicable law, herein presents his claims in Angelette, LLC's Complaint For Exoneration From or Limitation of Liability.

## JURISDICTION & PARTIES

1. This is a case of admiralty and maritime jurisdiction as hereinafter more fully appears. This is an admiralty and maritime claim within the meaning of Rule 9(h). Claimant's claims arise under the general maritime law of the United States. Claimant reserves his right to bring claims in a court of jurisdiction of his choosing, with jury, should he so elect upon the eventual dismissal of the present limitation action.

2. All events and transactions which give rise to this cause of action transpired

within the State of Alaska and its territorial waters and/or those waters to which Alaska is the closest state.

3.  During all times herein mentioned, on information and belief, Angelette, LLC was the owner and/or owner pro hace vice and/or operator of the Vessel KUPREANOF, Official Number 562486 (hereinafter referred to as "the vessel").

4.  During all times herein mentioned, Jay Thomassen was the owner, controller, manager and agent of both the vessel KUPREANOF and Angelette, LLC.

5.  On information and belief, during all times herein mentioned, Jay Thomassen and Angelette, LLC were Claimant's employer.

## FACTUAL BACKGROUND

6.  Claimant hereby realleges and incorporates paragraphs 1-5.

7.  At some time prior to June 10, 2015, Claimant was engaged as a seaman by Jay Thomassen and Angelette, LLC as alleged herein to be employed as a crew member aboard the vessel KUPREANOF for the Bristol Bay salmon tendering season.

8.  On information and belief, while claimant signed a written agreement for his employment aboard the KUPREANOF, neither Jay Thomassen nor Angelette, LLC signed the agreement before the vessel left on its fateful voyage. Claimant was never provided a copy of his employment agreement.

9.  On information and belief, at some point prior to the vessel leaving port out of Petersburg, Alaska, gear and equipment were loaded and stored aboard the back deck of the vessel KUPREANOF for use in the Bristol Bay salmon tendering season. The location and stowing of gear and equipment was overseen and directly controlled by Jay Thomassen. Jay Thomassen directed other crew as to where to stow the gear and equipment on deck. Jay

Thomassen directed other crew as to where and how to lash the gear and equipment on deck. Neither claimant nor any of the rest of the crew made decisions regarding the placement of gear and equipment on the vessel's deck.

10. Included among the gear and equipment stowed and lashed on the KUPREANOF's back deck was a large fish pump. Jay Thomassen, with privity and knowledge, directed the crew to stow and lash the fish pump in an area of the vessel's stern rail. In this position the lazarette's stern deck hatch was covered and/or partially covered such that the lazarette was not accessible.

11. On information and belief, Stephen Berry, the vessel's skipper, informed Jay Thomassen of his concerns in having the vessel's lazarette hatch blocked by the manner and place in which Jay Thomassen wanted the fish pump stowed & lashed. Jay Thomassen informed Mr. Berry that this was the appropriate place for stowing the fish pump given vessel stability issues; and that all aspects of the lazarette were sound.

12. On information and belief, and at other times while the KUPREANOF was being made ready in Petersburg for her trip to Bristol Bay, Mr. Berry questioned Jay Thomassen about the seaworthy condition of various vessel bilges, pipes and pumps. Mr. Berry expressed to Jay Thomassen his concern over observations of rust, rusty pipes, and rusty pumps. Jay Thomassen assured Mr. Berry that the bilges, piping and pumps had previously been checked out, and that all were of good and satisfactory working condition.

13. During the morning of June 7, 2015, the KUPREANOF left the dock at Petersburg, Alaska and made her way over to the fueling dock in the same harbor. The vessel was met at the fueling dock by Jay Thomassen.

14. While at the fueling dock, the vessel took on fuel. Thereafter, at some time after

*Claimant Palmer Thomassen's Answer, Affirmative Defenses And Claims*
Case No. 1:15-CV-00012-SLG  Page 6 of 13
Case 1:15-cv-00012-SLG   Document 11   Filed 01/20/16   Page 6 of 13

8:00 a.m. ADT on June 7, 2015, the vessel left the fueling dock; and at some point after 8:30 a.m. ADT on June 7, 2015, left the waters of the area of Petersburg, Alaska on her way to Juneau, Alaska.

15. After taking on groceries in Juneau, Alaska, the KUPREANOF got underway for Bristol Bay, Alaska. As the vessel hit the Fairweather grounds, the weather picked up. Nonetheless, forecasts were for manageable winds and sea.

16. On information and belief, as the weather picked up, Mr. Berry called Jay Thomassen by way of the vessel's satellite phone to let him know that the weather was continuing to worsen. Mr. Berry told Jay Thomassen that if things got much worse, he would probably head back to more protected waters. Jay Thomassen told Mr. Berry that he was aware of the weather and weather forecasts, and that he, Jay Thomassen, saw nothing in the forecast to justify the vessel return to more protected waters. Jay Thomassen specifically ordered Mr. Berry not to turn back for more protected waters; but to rather stay the course to Bristol Bay.

17. On information and belief, at around 3:00 a.m. the early morning of June 10, 2015, Mr. Berry noted that the vessel was listing slightly to port. In an effort to determine the cause, he went below to the engine room to see if there was an ingress of water into the vessel; or if anything else might be causing the vessel to list. He observed no water in the engine room; and in fact during the entire time the vessel remained afloat, neither Mr. Berry nor the crew ever observed or heard report of water in the engine room.

18. On information and belief, as the listing developed aft-port, Mr. Berry shifted fuel out of the port side tanks to the starboard tanks. This did nothing to improve the aft-port list, and in fact the stern of the vessel continued to sink lower in the water. Mr. Berry had all pumps engaged to dewater all possible ingress of water into the vessel, but the vessel's stern continued

to sink. No alarms sounded.

19. On information and belief, all aboard the vessel were of the opinion that somehow water was entering the lazarette. Unfortunately, those aboard the vessel were unable to access the lazarette to determine if and how water was entering the lazarette; and/or determine the working condition and effectiveness of the lazarette pump; and/or put into the lazarette a portable pump to assist in dewatering efforts. At least one reason why the crew could not access the lazarette was because Jay Thomassen had ordered them to stow and lash the large fish pump in such a manner as the lazarette could not be accessed.

20. At some time after the stern of the KUPREANOF submerged, various pieces of equipment came loose; including at least one of the vessel's cranes. Additionally, the fish pump lashed to the vessel's stern came loose and was washed overboard. By this time, however, the stern was underwater and it was not possible for the crew to approach, much less access for inspection, the lazarette.

21. Despite all efforts by the crew, the vessel continued to sink by her stern. Mr. Berry ordered the crew don survival suits, and at approximately 3:30 a.m., Mr. Berry sent out a May Day to the USCG. While waiting for the USCG to arrive, Mr. Berry and the crew continued their efforts to save the vessel. Their efforts, however, were without success.

22. In his efforts to prevent the sinking of the KUPREANOF, and then again while abandoning the vessel and being rescued by the USCG, claimant incurred emotional injuries, and was constantly in fear of losing his life. Claimant was caused to jump from the sinking vessel and into a life raft; and continues to suffer from mental anguish, distress, and PTSD like symptoms.

23. On information and belief, the USCG helicopter arrived on scene at around 4:15-

4:30 a.m. After being plucked from the waters by a USCG helicopter, claimant and the rest of the crew were flown to the USCG Station in Sitka, Alaska.

24. On information and belief, upon arrival to the USCG Station, Sitka, Alaska, Mr. Berry immediately telephoned Jay Thomassen using his cell phone. On information and belief, Mr. Thomassen was in California at the time - in a time zone one hour ahead of ADT.

25. On information and belief, Jay Thomassen immediately notified the agent for his relevant H&M/P&I insurer that the vessel, while in route to Bristol Bay, Alaska, and with three crew and Mr. Berry aboard, sank.

26. On information and belief, Jay Thomassen's notice to the agent of his H&M/P&I insurer was made within 72 hours of the KUPREANOF leaving the waters of the area of Petersburg, Alaska.

27. Amazingly, Jay Thomassen has never contacted or spoken to claimant since the sinking of the KUPREANOF.

## CLAIMS FOR NEGLIGENCE AND UNSEAWORTHINESS

28. Claimant hereby realleges and incorporates paragraphs 1-27.

29. On or about June 10, 2015, and while claimant was performing his duties aboard the vessel KUPREANOF, and as a direct and proximate result of the negligence of Jay Thomassen and Angelette, LLC and/or their agents, officers, and/or representatives, and/or as the direct and proximate result of the unseaworthiness of the vessel KUPREANOF, claimant incurred emotional and psychological trauma while attempting to save, and then while disembarking and being rescued from the vessel KUPREANOF. Claimant continues to suffer from emotional and psychological trauma and PTSD.

30. The negligence and unseaworthiness alleged herein includes, without limit, Jay Thomassen's decision to stow and lash the fish pump such that the lazarette could not be accessed via the lazarette hatch, the placement of the fish pump such that the lazarette could not be accessed via the lazarette hatch, negligent and faulty representations regarding the condition of the bilges, pipes and pumps, negligent representations and orders that the vessel continue on course irrespective of what Mr. Berry thought, condition of alarms, and condition of vessel structures.

31. As a direct and proximate result of said negligence and/or unseaworthiness as herein alleged, claimant was caused to suffer injuries, inter alia, including emotional and psychological trauma, including without limit PTSD.

32. Additionally, after claimant suffered his injuries on the vessel KUPREANOF, Petitioner failed and/or refused to pay claimant all of the maintenance and cure to which he was entitled. Petitioner's negligent and/or intentional failure to pay maintenance and cure or otherwise provide for claimant's medical care and support during convalescence is negligence under the Jones Act, and is the direct and proximate cause of additional physical, emotional and/or economic injuries suffered by claimant.

33. As a direct and proximate cause of the above-described injuries, claimant was prevented from, and may in the future be prevented from, completely pursuing his regular occupation, in addition to the loss of income claimant has already suffered because of said injury; and claimant was prevented from, and he may in the future be prevented from, enjoying the enjoyments and pursuits of life, and claimant has further incurred, and may in the future incur, reasonable and necessary medical expenses, including but not limited to, physician fees

and medication costs, all to claimant's damage in the sum in excess of One Hundred Thousand Dollars ($100,000.00), to be proven more definitely at trial in this matter.

## CLAIMS FOR MAINTENANCE AND CURE, ATTORNEY'S FEES & EXEMPLARY DAMAGES

34. Claimant hereby realleges and incorporates paragraphs 1 - 33.

35. By reason of the injuries received in the service of the vessel KUPREANOF, while employed by Jay Thomassen and Angelette, LLC as alleged herein, claimant incurred injury and physical disability and is entitled to maintenance and cure on a continuing basis until such time as he reached and/or in the future reaches maximum medical improvement. Claimant's injuries required, and may in the future require, medical care. To date, and despite legal requirement, claimant has not been provided any maintenance and cure as required under the general maritime law. At all times, Petitioner (as alleged herein) willfully and persistently and to claimant's detriment, refused to timely pay claimant all of the amounts of maintenance and cure to which he is and was entitled. Claimant herein demands payment from Petitioner all amounts owed in maintenance and cure, as well as any other damages found owing under the maritime law for failure to pay maintenance and cure owed as required; including without limit the payment of exemplary damages and attorney's fees incurred in obtaining the same.

WHEREFORE, PREMISES CONSIDERED, claimant prays this Court to hear his just cause of action, and that this Court require Petitioner to answer his just cause of action, and that he be awarded judgment against Petitioner as follows:

1. That claimant be awarded maintenance and cure against Petitioner;

2. That claimant be awarded compensatory damages, and any other damages allowable under the general maritime law, against Petitioner jointly and severally in a sum in excess of One

Hundred Thousand Dollars ($100,000.00), in an amount to be more fully determined at trial in this matter;

3. That claimant be awarded punitive damages against petitioner for petitioner's willful, intentional, and callous actions, all done with a deliberate disregard of claimant's well-being, for failing to pay claimant's maintenance and cure, in an amount to be more fully determined at trial in this matter.

4. That claimant be awarded his actual attorney's fees against petitioner for petitioner's willful, intentional, and callous actions, all done with a deliberate disregard of claimant's well-being, for failing to pay claimant's maintenance, cure and unearned wages, in an amount to be more fully determined at trial in this matter.

5. That claimant be awarded attorney's fees, pre-judgment interest, post-judgment interest, costs, and any other relief in law or equity to which claimant is shown to be entitled.

DATED at Anchorage, Alaska, this 20th day of January, 2016.

JOHNSON KAMAI & TRUEB, LLC
Attorney for Claimant

By: /s/ Lanning M. Trueb
Lanning M. Trueb, ABA No. 8911083
330 L Street
Anchorage, AK 99501
Phone: 907.277.0161
Fax: 907.277.0164
E-mail: Lmtrueb@msn.com

**CERTIFICATE OF SERVICE**

I hereby certify a true and correct copy of the foregoing was sent via electronic submittal on January 20, 2016 upon the following:

Steven J. Shamburek
425 G Street, Suite 610
Anchorage, AK 99501
shamburek@gci.net

By: /s/ Lanning M. Trueb