# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

IN THE MATTER OF THE COMPLAINT
OF ANGELETTE, LLC, an Alaska
limited liability company, Owner of the
T/V KUPREANOF, Number 562486 for
exoneration from or limitation of liability,

Plaintiff.

**IN ADMIRALTY**

Case No. 1:15-cv-00012-SLG

## ORDER RE PENDING MOTIONS

Before the Court are Claimants Marcos Carrillo and Yolanda Perez's Motion for Summary Judgment at Docket 67, Claimant Stephen Berry filed a joinder to the motion at Docket 69; Claimant Palmer Thomassen filed a joinder to the motion at Docket 70.[1] Plaintiff Angelette, LLC, as owner of the T/V Kupreanof, filed a Motion for Partial Summary Judgment Regarding Wages, Maintenance and Cure and Personal Property and a Motion for Partial Summary Judgment Regarding Exoneration from Liability at Docket 73 and Docket 75, respectively.[2] The motions are fully briefed.[3] Oral argument on the motions

---

[1] *See also* Docket 68 (Claimant Carrillo and Perez's Mem.).

[2] *See also* Docket 74 (Plaintiff's Mem.); Docket 76 (Notice of Exhibit); Docket 78 (Plaintiff's Mem.); Docket 80 (Notice of Exhibit).

[3] *See* Docket 82 (Plaintiff's Opp'n); Docket 91 (Claimants Carrillo and Perez's Reply); Docket 86 (Claimants Carrillo and Perez's Opp'n); Docket 88 (Claimant Thomassen's Opp'n); Docket 90 (Claimant Berry's Opp'n); Docket 94 (Plaintiff's Reply); Docket 95 (Plaintiff's Reply).

was held on April 4, 2018.[4]  For the reasons set forth below, the Court will grant Plaintiff's motion as to the unearned wages claims only; all other motions will be denied.

## BACKGROUND

On cross-motions for summary judgment, the Court must consider each motion separately to determine whether that party has met its burden with the facts construed in the light most favorable to the other side.[5]  The facts of the case as presented by the parties are as follows:

Angelette, LLC, is the owner of the T/V Kupreanof ("Kupreanof").  Jay Thomassen is the sole member of Angelette, LLC.[6]  Prior to June 7, 2015, Mr. Carrillo, Mr. Perez, Captain Berry, and Palmer Thomassen were hired as crew aboard the Kupreanof for the Bristol Bay salmon season.[7]  In May 2015, Captain Berry and Jay Thomassen took the Kupreanof to Icicle Seafoods to obtain the fishing gear for the vessel.[8]  On June 1, 2015, the gear was latched to the boat before the boat was taken over to Piston & Rudder to have some work done.[9]  Jay Thomassen testified that some of the gear was moved during

---

[4] Docket 100 (Minutes re Oral Arg.).

[5] *See* Fed. R. Civ. P. 56; *see also, e.g., Fair Hous. Council v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).  When setting forth Claimants' perspective, the Court cites primarily to Mr. Carrillo's Answer and Presentation of Claims at Docket 8.  However, the Claimants have all filed similar Answers and Presentation of Claims. *See* Docket 9 (Claimant Berry's Answer); Docket 10 (Claimant Perez's Answer); Docket 11 (Claimant Thomassen's Answer).

[6] Docket 68-2 (State of Alaska Business Licensing of Angelette LLC).

[7] Docket 8 (Claimant Carrillo's Answer) at 5, ¶ 7.

[8] Docket 68-4 (Jay Thomassen's Depo.) at 7–9.

[9] Docket 68-4 at 11, 16.

this process.[10] Jay Thomassen last saw the vessel on June 6, 2015 at approximately 5 p.m. at the port in Petersburg, Alaska.[11] At that time, Jay Thomassen walked by the boat and saw there was gear stored at the stern of the boat.[12] He testified that he was unsure whether it was the same gear he had previously seen stored at the stern of the boat. The parties dispute whether the equipment was then stowed in a manner that blocked access to the lazarette and whether Jay Thomassen was directing the stowage activities.[13]

On June 7, 2015, the Kupreanof left Petersburg.[14] After making a stop in Juneau, the vessel departed for Bristol Bay.[15] As the vessel and crew approached the Fairweather Grounds, the weather picked up; however, the three-day forecast was for light winds and seas.[16]

Early in the morning on June 10, 2015, Captain Berry noted that the Kupreanof was listing slightly to port. He checked the engine room but found no water. Captain Berry then shifted fuel out of the port side tanks to the starboard tanks and engaged all

---

[10] Docket 68-4 at 11–12.

[11] Docket 68-4 at 13.

[12] Docket 68-4 at 13.

[13] *See infra* notes 58–60 and accompanying text. Claimants allege that while in port in Petersburg, Alaska, "Jay Thomassen, with privity and knowledge, directed the crew to stow and lash the fish pump in an area of the vessel's stern rail. In this position the lazarette's stern deck hatch was covered and/or partially covered such that the lazarette was not accessible." Docket 8 at 6, ¶ 10. Plaintiff responds, "Mr. Thomassen was not on the Petersburg Dock on June 7, 2015. Captain Berry made all the decisions regarding the placement of gear and equipment on the Vessel and on the Vessel's deck." Docket 16 (Plaintiff's Answer and Countercls. to Captain Berry) at 3, ¶ 9.

[14] Docket 68-8 (Declaration of Yolanda Perez) at 1.

[15] Docket 8 at 7, ¶ 15; Docket 68-3 (Captain Berry's Depo.) at 5, 18.

[16] Docket 68-3 at 7.

of the pumps to remove water from inside the vessel.[17] Captain Berry testified that at that time, the pumps all worked, including the lazarette pump, but the crew was unable to check whether water was entering the lazarette due to the fishing gear stowed on top of it, blocking access.[18] The vessel began to sink; Captain Berry ordered the crew to put on survival suits and called Mayday to the United States Coast Guard ("USCG").[19] The captain and crew abandoned the vessel and were rescued by the USCG shortly before the Kupreanof sank completely.[20]

On November 12, 2015, Plaintiff filed its Complaint seeking exoneration from or limitation of liability.[21] Plaintiff asserts that any injuries or damages arising out of the casualty "were occasioned and incurred without the privity or knowledge of Plaintiff at or prior to commencement of the voyage."[22]

Claimants filed Answers and Presentation of Claims, asserting claims for negligence and unseaworthiness in addition to maintenance and cure, attorney's fees, and exemplary damages.[23] Specifically, Claimants allege that "Jay Thomassen's decision to stow and lash the fish pump such that the lazarette could not be accessed via

---

[17] Docket 68-3 at 9–10.

[18] Docket 68-3 at 8, 10, 12.

[19] Docket 68-3 at 10–11.

[20] Docket 8 at 8–9, ¶ 23. A video of the sinking of the Kupreanof can be found at https://www.youtube.com/watch?v=Djqg8tFlkw4.

[21] Docket 1 (Compl.).

[22] Docket 1 at 4, ¶ 22.

[23] Docket 8 at 10–11.

the lazarette hatch" rendered him negligent and made the vessel unseaworthy.[24] Claimants allege they sustained physical, emotional, and psychological injuries from the incident.[25] Plaintiff asserted counterclaims against Captain Berry and Palmer Thomassen for contributory negligence.[26] The parties have filed cross-motions for summary judgment.

## DISCUSSION

### I. Jurisdiction

This is a case of admiralty and maritime jurisdiction within the meaning of Federal Rule of Civil Procedure 9(h). The claims arise under the general maritime law of the United States and under the Jones Act pursuant to 46 U.S.C. § 30104.

### II. Standard for Summary Judgment

Federal Rule of Civil Procedure 56(c) directs a court to grant summary judgment if the movant "show[s] that there is no genuine issue as to any material fact and that [the movant] is entitled to a judgment as a matter of law." When considering a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."[27] When faced with cross-motions for summary judgment, the court "review[s] each separately, giving the non-movant for each motion

---

[24] Docket 8 at 10, ¶ 30.

[25] Docket 8 at 9, ¶ 29.

[26] Docket 16 at 14; Docket 17 (Jay Thomassen's Answer and Countercls. to Palmer Thomassen) at 14.

[27] *Moldex-Metric, Inc. v. McKeon Prods., Inc.*, 891 F.3d 878, 881 (9th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Case No. 1:15-cv-00012-SLG, *In re Angelette, LLC*
Order re Pending Motions
Page 5 of 15

the benefit of all reasonable inferences."[28] To reach the level of a genuine dispute, the evidence must be such "that a reasonable jury could return a verdict for the non-moving party."[29] If the evidence provided by the non-moving party is "merely colorable" or "not significantly probative," summary judgment is appropriate.[30]

## III. Analysis

### A. Maintenance and Cure

Claimants seek maintenance and cure as well as damages for the failure to pay maintenance and cure, including attorney's fees and exemplary damages.[31] Plaintiff seeks summary judgment on these claims, asserting that "the Limitation of Liability Act does not require the payment of maintenance and cure."[32] Claimants respond that "the Limitation of Liability Act applies to claims involving the vessel owner/employer's fault in causing loss and damages. The vessel owner/employer's maintenance and cure obligations, conversely, are independent of fault."[33]

"The Limitation of Liability Act limits shipowner liability arising from the unseaworthiness of the shipowner's vessel or the negligence of the vessel's crew unless the condition of unseaworthiness or the act of negligence was within the shipowner's

---

[28] *Flores v. City of San Gabriel*, 824 F.3d 890, 897 (9th Cir. 2016) (citing *Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cty. Sheriff Dep't*, 533 F.3d 780, 786 (9th Cir. 2008)).

[29] *Anderson*, 477 U.S. at 248.

[30] *Id.* at 249–50.

[31] Docket 8 at 11, ¶ 35; Docket 9 at 11, ¶ 35; Docket 10 at 11, ¶ 35, Docket 11 at 11, ¶ 35.

[32] Docket 74 at 1–2 (citing 46 U.S.C. §§ 30501-30512).

[33] Docket 86 at 5.

'privity or knowledge.'"[34] But the remedy for maintenance and cure is distinct from the remedies for negligence and seaworthiness.[35] "Maintenance and cure is designed to provide a seaman with food and lodging when he becomes sick or injured in the ship's service; and it extends during the period when he is incapacitated to do a seaman's work and continues until he reaches maximum medical recovery."[36] "The shipowner's duty to pay maintenance and cure is virtually automatic, regardless of negligence by the seaman or lack of negligence by the shipowner."[37]

> The Fifth Circuit has recognized that
>
> a shipowner cannot limit its liability for maintenance and cure. It may bring a limitation action only in response to a finding of negligence or unseaworthiness. As a result, an award for maintenance and cure is independent of these other sources of recovery.[38]

The Court agrees with this analysis. Accordingly, the maintenance and cure claims are not subject to limitation under the Limitation of Liability Act. Plaintiff's Motion for Summary Judgment as to limitation of maintenance and cure under the Limitation of Liability Act will be denied. All unresolved claims for maintenance and cure shall be addressed at trial.[39]

---

[34] *In re BOWFIN M/V*, 339 F.3d 1137, 1137 (9th Cir. 2003) (per curiam) (citing 46 U.S.C. § 30505).

[35] *Barnes v. Sea Hawaii Rafting, LLC*, 889 F.3d 517, 537 (9th Cir. 2018) (citing *Fitzgerald v. U.S. Lines Co.*, 374 U.S. 16, 18 (1963)).

[36] *Vaughn v. Atkinson*, 369 U.S. 527, 531 (1962).

[37] *Barnes*, 889 F.3d at 536 (citing *Bertram v. Freeport McMoran, Inc.*, 35 F.3d 1008, 1013 (5th Cir. 1994)).

[38] *Brister v. A.W.I. Inc.*, 946 F.2d 350, 361 (5th Cir. 1991); *see also Keliihananui v. KBOS, Inc.*, 2010 WL 2176105, at *11 (D. Hawai'i May 24, 2010).

[39] Plaintiff also asserts that Claimants have waived any argument for maintenance and cure because no timely motion for maintenance and cure was filed. Docket 94 at 1. This argument is without merit. In *Barnes v. Sea Hawaii Rafting, LLC*, the Ninth Circuit recognized that most maintenance and cure disputes can be resolved through summary judgment. 889 F.3d 517, 539

*B. Unearned Wages*

Captain Berry and Palmer Thomassen each assert claims for unearned wages.[40] Plaintiff asserts all claims for unearned wages are barred by the statute of limitations in 46 U.S.C. § 10602, which provides in relevant part as follows:

> When fish caught under an agreement under section 10601 of this title are delivered to the owner of the vessel for processing and are sold, the vessel is liable in rem for the wages and shares of the proceeds of the seaman. An action under this section must be brought within six months after the sale of the fish.[41]

However, this statute does not apply in this case because no fish were delivered to the Kupreanof for processing, and no sale of fish occurred.

Plaintiff also notes that Claimants' employment contracts provide in relevant part that an action concerning "any dispute that arises out of their employment relationship . . . must be brought within six (6) months after the expiration of this Contract or such claim shall be waived by [individual] for all purposes."[42] Claimants maintain that all claims were made within the six-month period because the employment contract was for the 2015

---

(9th Cir. 2018). But a party is not required to file a dispositive motion to obtain maintenance and cure. Rather, the summary judgment vehicle allows for an award of maintenance and cure to injured seamen before trial. *Id.* ("[A] seaman who demonstrates his entitlement to maintenance and actual expenses need not wait until trial to receive the portion of those expenses to which he is undisputedly entitled."). But the availability of a pretrial award does not preclude a claimant from electing to wait until trial to obtain maintenance and cure. Likewise, whether Plaintiff is entitled to withholding of damages is an issue to address at trial.

[40] *See* Docket 9 at 11, 12, ¶¶ 2, 4 (alleging compensatory damages and attorney's fees for failure to pay unearned wages); Docket 11 at 11, 12, ¶¶ 2, 4 (same); *see also* Docket 89 at 3; Docket 88 at 3. Mr. Carrillo and Mr. Perez are not making claims for unearned wages. Docket 86 at 2.

[41] 46 U.S.C. § 10602(a); Docket 74 at 6.

[42] Docket 74 at 10 (quoting Docket 22-3 (Captain Berry's Employment Contract) at 4, ¶ 13; Docket 22-4 (Palmer Thomassen's Employment Contract) at 4, ¶ 13; Docket 22-5 (Mr. Carrillo's Employment Contract) at 4, ¶ 13; Docket 22-6 (Ms. Perez's Employment Contract) at 4, ¶ 13).

salmon season, which ended September 30, 2015.[43] But the term of the Claimants' employment contracts was "for [the] entire 2015 salmon season *aboard the Vessel.*"[44] The vessel sank on June 10, 2015; after that date, Claimants were no longer "aboard the Vessel." Moreover, "[u]nearned wages are only available for the 'period of employment.'"[45] The crew's employment period or employment contracts ended on June 10, 2015. Claimants then had six months, or until December 10, 2015, to file a claim under the employment contract to the extent that there were unearned wages for the period through June 10, 2015. They did not file their claims until January 20, 2016, past the six-month deadline. Therefore, Plaintiff's Motion for Partial Summary Judgment as to Captain Berry's and Palmer Thomassen's unearned wage claims will be granted.

*C. Personal Property*

Claimants have pled claims for their lost personal property.[46] Plaintiff maintains that the employment contract that Captain Berry and Palmer Thomassen entered into excludes claims against the owner for the loss of personal property.[47] Claimants respond that "the provisions of the contract cited do not actually say petitioner is not responsible

---

[43] Docket 88 at 3.

[44] Docket 22-3 at 1; Docket 22-4 at 1; Docket 22-5 at 1; Docket 22-6 at 1 (emphasis added).

[45] *Day v. Am. Seafoods Co. LLC*, 557 F.3d 1056, 1058 (9th Cir. 2009); *see also Lipscomb v. Foss Maritime Co.*, 83 F.3d 1106, 1109 (9th Cir. 1996) (Seaman is entitled to "unearned wages from the onset of injury or illness until the end of the voyage.").

[46] Although none of the Claimants expressly makes a claim for personal property in their pleadings, they all allege claims for compensatory damages, which can include personal property. Docket 8 at 12, ¶ 2, (alleging compensatory damages); Docket 9 at 11, ¶ 2 (same); Docket 10 at 12, ¶ 2, (same); Docket 11 at 11, ¶ 2, (same); *see also* Docket 86 at 2–3; Docket 89 at 6.

[47] Docket 74 at 11.

for lost personal property."[48] Captain Berry's and Palmer Thomassen's employment contracts each provide in pertinent part as follows:

> [Captain/Engineer]'s personal property is the sole responsibility of the [Captain/Engineer] and the Owner and its representatives make no assurances or guarantees for the safety or condition of [Captain/Engineer]'s personal property while on board the vessel.[49]

Although each contract addresses the safety and condition of Claimants' personal property, it does not address complete loss of property; nor does it address the result if the owner's negligence or the vessel's unseaworthiness is found to have caused the loss of Claimants' personal property.

The employment agreement between Captain Berry and Palmer Thomassen and Plaintiff provides that "any dispute that arises out of their employment relationship will be governed by the laws of the State of Alaska."[50] Under Alaska law, ambiguities in an exculpatory clause of a contract "will be resolved against the party seeking exculpation, and that to be enforced the intent to release a party from liability for future negligence must be conspicuously and unequivocally expressed."[51] Because the employment

---

[48] Docket 86 at 2. Claimants also assert that Plaintiff cannot "limit by contract a seaman's rights and remedies under the Jones Act." Docket 86 at 11. The Jones Act permits an injured seaman to recover damages against the employer for "personal injury." 42 U.S.C. § 30104. Claimants do not point to any authority that allows them to recover for personal property under the Jones Act. Claims for personal property can be alleged under general maritime law. *See* Thomas J. Schoenbaum, 1 Admiralty & Mar. Law § 5-16 (5th ed. 2017) ("In admiralty jurisdiction monetary damages for negligent injury to property are assessed according to the principle that such damages serve a compensatory function and must be tailored to place the aggrieved party in as good a position as he was before the accident.").

[49] Docket 22-3 at 4, ¶ 11; Docket 22-4 at 4, ¶ 11.

[50] Docket 22-3 at 4, ¶ 13; Docket 22-4 at 4, ¶ 13; Docket 22-5 at 4, ¶ 13; Docket 22-6 at 4, ¶ 13.

[51] *Kissick v. Schmierer*, 816 P.2d 188, 191 (Alaska 1991); *see also Ledgends, Inc. v. Kerr*, 91 P.3d 960, 961–62 (Alaska 2004).

contracts of Captain Berry and Palmer Thomassen are ambiguous as to the responsibilities of the parties should the owner be found to be negligent or the vessel unseaworthy, partial summary judgment on Plaintiff's limitation of liability claim with respect to personal property under general maritime law will be denied.

### D. Unseaworthiness and Negligence

Claimants allege claims for unseaworthiness and for negligence under the Jones Act.[52] Plaintiff seeks to exonerate or limit its liability under the Limitation of Liability Act. "In the admiralty proceeding in which a shipowner seeks to exonerate himself from liability or to limit his liability, the burden of proving negligence or unseaworthiness rests upon the claimant."[53] If the claimant succeeds in that first-stage endeavor, then the shipowner must prove the absence of privity or knowledge.[54] The parties have filed cross motions for summary judgment as to these claims.

To prevail on a claim for unseaworthiness, a claimant must establish "(1) the warranty of seaworthiness extended to him and his duties; (2) his injury was caused by a piece of the ship's equipment or an appurtenant appliance; (3) the equipment used was not reasonably fit for its intended use; and (4) the unseaworthy condition proximately caused his injuries."[55] "A vessel's condition of unseaworthiness might arise from any number of circumstances. Her gear might be defective, her appurtenances in

---

[52] Docket 8 at 9; Docket 9 at 9; Docket 10 at 9; Docket 11 at 9.

[53] *Walston v. Lambertsen*, 349 F.2d 660, 663 (9th Cir. 1965).

[54] *N. Fishing & Trading Co., Inc. v. Grabowski*, 477 F.2d 1267, 1271 (9th Cir. 1973) (quoting *The 84-H*, 269 F. 427, 431 (2d Cir. 1923)).

[55] *Ribitzki v. Canmar Reading & Bates, Ltd. P'ship*, 111 F.3d 658, 664 (9th Cir. 1997).

Case No. 1:15-cv-00012-SLG, *In re Angelette, LLC*
Order re Pending Motions
Page 11 of 15

disrepair, her crew unfit. The number of men assigned to perform a shipboard task might be insufficient. *The method of loading her cargo*, or *the manner of its stowage*, might be improper."[56]

Claimants assert that stowing and lashing gear on a vessel in a manner that blocks access to the lazarette on such a vessel would render that vessel unseaworthy.[57] The Court agrees. However, genuine issues of material fact exist as to whether the gear on the Kupreanof was actually stowed in a manner that fully blocked access to the lazarette. Jay Thomassen testified that when he was at the vessel in Petersburg on June 6, 2015, the gear on the stern did not block access to the lazarette.[58] Yet Captain Berry testified that the crew were unable to access the lazarette to inspect it on June 10, 2015 because gear was covering it.[59] The parties also dispute whether the lazarette actually filled with water, such that any lack of access to the lazarette may not have caused the vessel to sink.[60] All reasonable inferences are to be construed in the nonmoving party's favor;

---

[56] *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 499 (1971) (emphasis added) (internal citations omitted).

[57] Docket 68 at 20.

[58] *See* Docket 68-4 at 14 ("Well, if [the gear] was on the stern, it was over [the lazarette openings], but they're still accessible . . . [b]ecause the gears stood up about three feet from the deck . . . with legs.").

[59] Docket 68-3 at 8, 12.

[60] Plaintiff asserts "[t]here are many truths in life: 1) the sun rises in the East, 2) someday all of us will be absolved of our mortality and go the way of all flesh, and 3) there was no (sea) water in the lazarette of the KUPREANOF on June 10, 2015." Docket 95 at 3. To support this, Plaintiff's expert, Jack McFarland with Alaska Marine Surveyors, Inc., opined as follows:

> The cause of the T/V Kupreanof sinking, on a more probable-than-not basis, appears to be due to an unstable condition caused by the Vessel Captain Stephen Berry, where he had burned fuel off one or both of the F/V Kupreanof's starboard side fuel tanks, while in heavy weather, in open ocean conditions, where the

therefore Claimants' and Plaintiff's motions for summary judgment on Claimants' unseaworthiness claims are denied.[61]

The Jones Act permits an injured seaman to recover damages against the employer for "personal injury."[62] "[P]roof of negligence is [] essential to recovery under the Jones Act."[63] To establish a cause of action for negligence under the Jones Act, a Claimant must establish "duty, breach, notice and causation."[64] "The employer of a seaman owes the seaman a duty under the Jones Act to provide the seaman with a safe place to work."[65] It is undisputed that Claimants were seamen employed by Plaintiff.

---

> stability of the Vessel was compromised, resulting in a sudden listing of the Vessel to port, due to free surface shifting, when the weight on the port side became greater than that on the starboard side, initially, between the port and starboard side fuel tank arrangement, then within the freshwater and fish hold compartments.

Docket 75-6 (Expert Report of Jack L. McFarland dated Oct. 30, 2017) at 24.

Claimants' expert, naval architect Lawson E. Bronson, opined as follows:

> The only compartment aft of the center of flotation contributing buoyancy was the lazarette. If this compartment fills with seawater the stern will go under.
>
> . . .
>
> It is my opinion that the owner was negligent in storing deck cargo in a manner that prevented the crew from entering the lazarette.

Docket 68-9 (Mr. Bronson's Expert Report dated Nov. 30, 2017) at 1, 3; *see also* Docket 84-5 (Mr. Bronson's Affidavit) at 2, ¶ 4 ("It is apparent from the facts that the KUPREANOF sank as a result of flooding of the lazarette (the sternmost compartment.")).

[61] In light of the denial of summary judgment to any party, whether Plaintiff is entitled to any limitation of liability as to Claimants' unseaworthiness claims is also to be determined at trial.

[62] 42 U.S.C. § 30104.

[63] *Jacob v. City of New York*, 315 U.S. 752, 755 (1942).

[64] *Ribitzki v. Canmar Reading & Bates, Ltd. P'ship*, 111 F.3d 658, 662 (9th Cir. 1997).

[65] *Id.*

However, genuine issues of material fact exist as to Plaintiff's breach, notice and causation. Whether Plaintiff breached its duty to Claimants to provide a safe place to work is disputed, as discussed above. Moreover, even if Plaintiff breached its duty, the parties dispute whether a breach of that duty was the cause of Claimants' injuries. Notice requires that "the employer or its agents either *knew or should have known* of the dangerous condition."[66] As previously discussed, the parties dispute whether Jay Thomassen was aware that the lazarette was inaccessible.[67] Finally, the cause of the vessel's sinking is also disputed. Accordingly, the Court will deny summary judgment to any party as to Claimants' negligence claims.[68]

Plaintiff alleges comparative fault claims against Captain Berry and Palmer Thomassen for negligence.[69] Plaintiff asserts Captain Berry "negligently operated and managed" the vessel and Palmer Thomassen "negligently assisted in the operation and management of the T/V KUPREANOF."[70]

"[M]ere contributory negligence is not a bar to [the employee's] recovery."[71] However, a "seaman-employee may not recover from his employer for injuries caused by

---

[66] *Id.* at 663 (emphasis in original).

[67] *See supra* notes 58–59 and accompanying text.

[68] Whether Plaintiff is entitled to limitation of liability on Claimants' negligence claims will also be determined at trial.

[69] Plaintiff has not alleged counterclaims for comparative fault against Mr. Carrillo or Ms. Perez. *See* Docket 18 (Jay Thomassen's Answer and Countercls. to Mr. Carrillo); Docket 19 (Jay Thomassen's Answer and Countercls. to Ms. Perez).

[70] Docket 16 at 14; Docket 17 at 14.

[71] *California Home Brands, Inc. v. Ferreira*, 871 F.2d 830, 836 (9th Cir. 1989).

his own failure to perform a duty imposed on him by his employment."[72] No party has expressly moved for summary judgment as to these claims; therefore, whether either of these Claimants was contributorily negligent will also be addressed at trial.[73]

## CONCLUSION

In light of the foregoing, Plaintiff's Motion for Partial Summary Judgment at Docket 73 is GRANTED solely as to Claimants' unearned wages claims. Plaintiff's motions at Docket 73 and 75 are DENIED in all other respects. Claimants' Motions for Summary Judgment at Docket 67, Docket 69, and Docket 70 are DENIED.

DATED this 16th day of July, 2018.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[72] *Id.*

[73] The parties did not brief Plaintiff's breach of contract claims against Captain Berry and Palmer Thomassen. Docket 16 at 12; Docket 17 at 12. Therefore, these claims may also be addressed at trial.